UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ANGELES FLORES RODRIGUEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>  Defendant. | No. 1:21-cv-00485-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 18, 20)** |

### I.     Introduction

Plaintiff Maria Angeles Flores Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 18, 20, 21.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore Denied.

### II.     Factual and Procedural Background[2]

On February 5, 2018 Plaintiff applied for disability insurance benefits and supplemental security income alleging a disability onset date of September 1, 2016.  The Commissioner denied the applications initially on June 6, 2018 and on reconsideration on September 11, 2018.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on June 9, 2020.  AR 41–62.  On August 19, 2020 the ALJ issued a decision denying Plaintiff's application.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 and 9.

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

AR 20–40.  The Appeals Council denied review on October 26, 2020.  AR 6–13.  On March 23, 2021, Plaintiff filed a complaint in this Court.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of September 1, 2016. AR 28. At step two the ALJ found that Plaintiff had the following severe impairments: neuropathy, degenerative joint disease of the bilateral knees post bilateral arthroscopy, degenerative disc disease, and asthma. AR 29. The ALJ also found at step two that Plaintiff had the following non-severe impairments: obesity, diabetes mellitus, hypertension, varicose veins of the bilateral lower extremities, hiatal hernia, and gastritis. AR 29. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 29.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following restrictions: never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally kneel, crouch, and crawl; frequently balance and stoop; tolerate frequent exposure to extreme cold. AR 30–34.

At step four the ALJ found that Plaintiff could perform her past relevant work as a fruit farm worker as actually performed, and her past relevant work as a picking table worker as actually and generally performed. AR 34. Accordingly, the ALJ found that Plaintiff was not disabled at any time since her alleged disability onset date of September 1, 2016. AR 35.

## V. Issues Presented

Plaintiff asserts two claim of error: 1) that the ALJ erred in rejecting the opinion of the consultative examiner, Dr. Stoltz; and, 2) that the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's pain testimony.

### A. Dr. Stoltz's Opinion

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are

reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

On April 22, 2022, the Ninth Circuit addressed whether the specific and legitimate reasoning standard is consistent with the revised regulations, stating as follows:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, see Murray, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)

### 2. <u>Analysis</u>

On August 8, 2019 Dr. Stoltz conducted a consultative physical examination of Plaintiff at the request of the agency. Dr. Stoltz provided examination notes followed by a check-box RFC questionnaire. AR 833–44. Dr. Stoltz opined that Plaintiff is limited to less than sedentary work with up to 10 pounds of occasional lifting, one hour of walking and two hours of standing in a day; cane use for ambulation over 50 feet; frequent reaching, handling, fingering, feeling, pushing and pulling; occasional stooping, kneeling, and crouching; no crawling or climbing stairs, ramps, ladders, or scaffolds. AR 840–42.

The ALJ found the opinion unpersuasive, explaining as follows:

> The opinion of the doctor is not persuasive, as it is not supported by the doctor's own physical objective findings in the consultative report and does not appropriately explain the reason for these limitations. Furthermore, the opinion is inconsistent with significant physical health notes indicating the claimant had fairly improved joint symptoms following her surgeries in the knees, and had relief from pain in the feet and lower back due to ongoing pain management and follow up treatment through recent notes in 2020. Moreover, the claimant reported in 2020 to have had substantial improvement from pain symptoms and has been doing well, which indicated the claimant is capable of more than sedentary type work (Ex. 4F/4-5, 6F/8, 8F/7-9, 16F/2-6, & 19F/3-5).

AR 33.

As the ALJ noted, Dr. Stoltz's opinion was largely not supported by the objective findings he identified in his examination. Range of motion in her neck, shoulders, elbows, wrists, hips, knees, and ankles were all within normal limits. AR 836–37. Range of motion in her back was within normal limits as to extension, lateral flexion, and rotation, despite 50% reduced range of motion in flexion. AR 836. Motor strength was 5/5 in all extremities with good tone bilaterally and good active range of motion. *Id.* Sensation was grossly intact. *Id.* Reflexes were normal. *Id.*

Plaintiff emphasizes a few abnormalities Dr. Stoltz did identify despite the largely normal findings noted above. First, Plaintiff underscores Dr. Stoltz' findings that her grip strength was significantly reduced on the right and absent on the left, findings which she contends support the

limitation to 10 pounds of lifting and no more than frequent handling, fingering, feeling, pushing and pulling. Br. at 23. Indeed, the hand dynamometer reading was 10 pounds on the first attempt on the right, zero pounds on the second and third attempts on the right, and zero pounds on all three attempts on the left. Thus, Plaintiff is correct that Dr. Stoltz's opinion was supported in that respect. Not only would these grip strength results preclude lifting more than 10 pounds occasionally, they strongly suggest she could not grasp, hold, lift or carry essentially an object of any weight.[3]

As to the broader record beyond Dr. Stoltz's examination, Plaintiff did report wrist pain consistently to her physicians, and reported weakness on at least 1 occasion. On May 16, 2019 (three months prior to Dr. Stolz's exam) her physician noted that, "[s]he states she has difficulty gripping objects in AM due to pain and weakness." AR 938. The limitations described in that statement, however, are far from her demonstrated non-existent grip strength three months later. No comparable neurological deficits appear to be reflected anywhere in the record. At a November 2, 2017 visit at UCSF her physician noted "some mild weakness in the hand intrinsics." AR 462. The record does reflect positive tinel's sign (a provocation test involving tapping over the median nerve at the wrist), indicative of carpal tunnel. AR 1236. However, upper extremity EMG findings were within normal limits on May 29, 2019. AR 33, 855.

The ALJ did not specifically identify these facts at the portion of her decision addressing Dr. Stoltz's opinion. And, again, the point the ALJ did make when addressing Dr. Stoltz's opinion (that it was unsupported by his own examination) was not persuasive as it pertains to the functional limitations attributable to her wrists because the grip strength findings did indeed support his opinion. But the broader record did not, considering: **1)** her physician noted only "some mild

---

[3] For a 59-year old female, grip strength of 134 lbs and above is considered excellent, whereas less than or equal to 98 pounds is considered poor. National Health and Nutrition Examination Survey, Muscle Strength Procedures Manual at D-1, April 2011, *available at* https://www.cdc.gov/nchs/data/nhanes/nhanes_11_12/muscle_strength_proc_manual.pdf

weakness of the hand intrinsics" on November 2, 2017; **2)** Plaintiff stated to her physician only that she had "difficulty gripping objects in the AM due to pain and weakness on May 16, 2019," and, most notably; **3)** upper extremity EMG findings were within normal limits on May 29, 2019.  AR 462, 855, 938. This suggests the grip strength findings identified by Dr. Stoltz were likely anomalous.  Taking the grip strength findings from that one examination at face value, irrespective of the broader record, would undoubtedly require a disability finding on remand as those grip strength findings are inconsistent with the ability to perform any work of any kind.  Here, such a conclusion is not supportable.

Plaintiff further underscores Dr. Stoltz's findings that "Plaintiff's back impairment limited her ability to bend forward by half, she had pain with movement of her left knee, her daughter assisted Plaintiff on and off the examination table, and Plaintiff walked with an abnormal gait – limping on the left side – without the walker that she used at the examination." AR 835–37. Plaintiff contends that "[t]hese findings support Dr. Stoltz's walking and standing restrictions, his opinion that Ms. Rodriguez be allowed to use a cane for ambulating over 50 feet, and his opinion that her postural activities of balancing, stooping, kneeling, and crouching be reduced to occasional and that she should never crawl, climb stairs, ramps, ladders, or scaffolds." AR 840–42.

As to Plaintiff's 50% reduced flexion ROM, the ALJ did include related postural restrictions such as no more than frequent stooping (2/3 of an 8-hour day).  Dr. Stoltz did not opine Plaintiff was entirely precluded from stooping, but opined she could do so no more than occasionally (1/3 of an 8-hour day).  It is not apparent that a 50% reduction in flexion ROM would only permit stooping 1/3 of an 8-hour day rather than 2/3 of an 8-hour day.  Nor was the ALJ required to simply defer to Dr. Stoltz's medical expertise on the matter.  As noted by the ALJ, Dr. Stoltz did not explain the basis for the identified limitations by, for example, explaining that Plaintiff is limited to occasional stooping in consideration of her 50% flexion ROM.  That is certainly a reasonable

inference to draw, but not a required one.  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

The same analysis applies as to Plaintiff's painful ROM of her left knee.  Dr. Stoltz described it as "some discomfort with full passive movement of the left knee, but no swelling or edema was noted."  AR 836.  The ALJ did include postural restrictions in consideration of Plaintiff's knee impairment, including climbing, kneeling, crouching, balancing, and stooping, limiting some of these activities to frequent and others to occasional.  Dr. Stolz took the postural restrictions a step further, limiting them to occasional or never, with 1-2 hours of standing and walking and cane use for ambulation beyond 50 feet.  Plaintiff's ROM was within normal limits in both knees, albeit with some discomfort with full passive ROM of the left knee, without swelling or edema.  AR 836–37.  This does not establish that the postural restrictions needed to be amplified beyond what the ALJ included in the RFC, nor does it establish she was limited to 1-2 hours of total daily standing and walking with cane use beyond 50 feet.  And it was not so highly technical a matter that the ALJ was required to defer to Dr. Stoltz's expertise.   The ALJ reasonably included work restrictions in consideration of Plaintiff's knee impairment, though not as restrictive as opined by Dr. Stoltz.

Finally, that she did in fact bring a walker with her to the examination does not establish that she required one for ambulation beyond 50 feet.  Dr. Stoltz did observe she walked with a limp when not using the walker.  Similarly, other examinations in the record noted cane use and/or gait abnormalities such veering to the left, deficient acceleration, and abnormal swinging of the arms and legs in the gait cycle.  *See, e.g.*, AR 487, 508, 515.  On the other hand, her gait was noted as normal at several other examinations, as the ALJ stated. *See, e.g.*, AR 908, 1255, 1276, 1307, 1311,

1316, 1319, 1321.[4]  In some instances her gait was noted as normal and abnormal in the same examination.  For instance, on at least three occasions her gait was noted as abnormal with cane use under the "ambulation" section of the exam, but subsequently noted as normal with no cane use under the "neurological" section of the same exam.  *See, e.g.* AR 1236, 1247, 1251.  Because the record clearly contained mixed findings as to gait normality and assistive device use, the ALJ was not required to adopt Dr. Stoltz's opinion that Plaintiff was limited 1-2 hours of standing and walking with the use of an assistive device beyond 50 feet of ambulation.

Plaintiff also disputes the ALJ's finding that Dr. Stoltz's opinion was "inconsistent with significant physical health notes indicating the claimant had fairly improved joint symptoms following her surgeries in the knees."  Br. at 24, Doc.18 (quoting AR 33).  Plaintiff contends the ALJ overlooked that the surgeries were not intended to address osteoarthritis, but to correct internal derangements, medial meniscus tear, and chronic MCL sprain.  Plaintiff cites numerous records noting that the underlying osteoarthritis was expected to (and did) remain despite bilateral arthroscopic knee surgery, and that this lingering osteoarthritis continued to cause her pain and limitation.

Indeed, the ALJ did not make a factual finding that Plaintiff's knees were fully healed following her surgeries.  Rather, the ALJ cited records demonstrating significant post-surgical

---

[4] The ALJ did not cite most of these examples.  And some of the ones she did cite were not entirely accurate.  For example, she cited Exhibit 16F at 2-6 whereas the finding regarding normal gate appears at page 11 of that exhibit.  Defendant similarly offered citations to records that the ALJ did not cite (*see, e.g.*, (ECF Doc. 20, p. 9:14-20), which Plaintiff takes exception to as violative of the well-established principle that the Court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (emphasis in original). Neither *Connett* nor other controlling precedent, however, prohibits the Court from supplementing the ALJ's decision with additional examples of factual findings the ALJ already made (such as normal gait). Relatedly, it is good practice to fact check the ALJ's original citations and search for counterexamples the ALJ may have overlooked which, on balance, might warrant a different conclusion about the objective finding at issue.  While navigating through the 94 hits in the record for "gait," for example, it would be illogical and impractical for the Court to disregard all findings concerning normal gait unless they were also cited by the ALJ.

10

improvement to support the ALJ's finding that Plaintiff could perform light work with the identified postural restrictions. The ALJ acknowledged that Plaintiff reported continued pain following her 2018 right meniscus surgery but that she improved with physical therapy and that follow up examination noted full range of motion in all major joints, full motor strength, and no evidence of joint pain, tenderness, or deformity. AR 32 (citing AR 6F/8, AR 605). She followed up again on July 17, 2018 complaining of right knee pain with "a slight bit of instability," but noted that physical therapy had helped her and her doctor noted that her range of motion was improved. AR 32 (citing Ex. 9F/4-6, AR 749). Other records noted she still experienced "a slight amount of discomfort" after surgery but was improving. AR 755.

The ALJ also acknowledged that Plaintiff continued reporting pain after her left knee arthroscopy in 2019, but that her pain was reduced compared to pre-surgical levels and that she experience substantial improvement with injection therapy. AR 32 (citing Ex. 15F/2-9, AR 876–883). A review of those records confirms the accuracy of the ALJ's description thereof. Subjective notes reflect that "[p]atient had injection for the left knee and she says she is feeling much better after arthroscopy. She has improved substantially." AR 881.

The ALJ cited an additional examination dated April 13, 2020. Ex. 16F/2-6, AR 899–905. Plaintiff complained of ongoing knee pain, exhibited pain with range of motion, tenderness to palpation, and pain with patella compression. AR 902. However, she also exhibits normal gate, negative Lachman sign, negative McMurray sign, good patella tracking, and rated her pain as a 1 out of 10 with medication. AR 899, 901. Similar findings were noted in another post-surgical exam in December 2019. AR 904–909. In short, these post-surgical records undermined Dr. Stolz's opinion concerning the functional limitations caused by her knee impairments. The ALJ included postural restrictions in the RFC in consideration of lingering knee symptoms even after surgery. But the ALJ did not fully embrace the restrictions identified in Dr. Stoltz' opinion. The

record amply supported that decision.

As it relates to her back impairment, Plaintiff further disputes the ALJ's finding that Dr. Stoltz's opinion was inconsistent with the longitudinal record.  Plaintiff contends the ALJ placed undue emphasis on her 80 percent reported pain improvement following a May 2020 epidural steroid injection at the expense of records predating the epidural steroid injection which documented persistent pain.  Plaintiff contends these earlier dated records could substantiate a partial disability finding for a discrete period of time pre-dating the injection, and cites the Ninth Circuit's relatively recent decision in *Smith* for the proposition that it is legal error for an ALJ to "not adequately consider how [a claimant's] symptoms changed over time."  *Smith v. Kijakazi*, 14 F.4th 1108, 1110 (9th Cir. 2021).

The point is reasonably well taken.  Plaintiff reported 80% pain reduction following epidural steroid injections in May of 2020, which was about 1 month prior to the administrative hearing and about 3 months before the ALJ issued her decision.  In other words, the successful steroid injection was a very recent development when the ALJ issued the decision.  That was not a sound basis upon which to rest a conclusion about the functional impact of Plaintiff's degenerative disc disease during the preceding 4 year period from the September 2016 alleged onset date through the May 2020 injections.

But the ALJ's analysis of Plaintiff's degenerative disc disease was not limited to the 80% post-injection pain relief.  That was the final sentence of the paragraph she devoted to Dr. Stoltz's opinion, a paragraph which itself was toward the very end of a 4 page RFC analysis.  Scrutinizing the reasoning offered in that paragraph in isolation, as Plaintiff does, is not persuasive.  That argument appears to relate back to the now defunct treating physician rule which seemingly applied a more rigorous standard of review to the ALJ's rejection of a treating or examining opinion ("specific and legitimate" reasoning) than would otherwise apply to the ALJ's conclusions more

generally (substantial evidence).

Returning to the ALJ's broader reasoning in support of the RFC, the ALJ did not overlook or unduly discount pre-injection records regarding Plaintiff's back impairment from 2017 to 2019. The ALJ offered a balanced discussion of the pre-injection records and acknowledged abnormalities and normal findings alike. The ALJ discussed 2017 visits noting complaints of severe radicular pain and trochanteric tenderness, but no balance instability, no gait instability, no distress, denied any numbness and weakness, had negative straight leg raise testing, and no significant neurological deficits. AR 31 (citing Ex. 3F/7-17, AR 460–70). EMG studies showed lumbar radiculopathy, X-ray and MRI results showed normal alignment, mild spondylosis, mild to moderate foraminal stenosis, and no significant central canal stenosis. *Id.*

The ALJ also thoroughly covered examinations from 2018 and 2019 including Plaintiff's continued reported radicular back pain and mix of normal and abnormal physical examination and diagnostic findings. The ALJ acknowledged Plaintiff reported continued back pain in April 2018 but a physical examination showed no acute distress, full range of motion in the extremities, full motor strength, no neurological issues, and no evidence of joint pain, tenderness, or deformity. (Ex. 6F/8). She reported back pain again in July 2018 at King's Winery, but was noted to be stable and was prescribed Gabapentin. (Ex. 8F/7-9).

At the 2019 consultative examination she had a negative straight raise leg testing bilaterally, no muscle spasms and relatively normal range of motion save for 50% reduction in flexion. Again, as discussed above, the ALJ restricted her to frequent stooping in consideration thereof. Finally, the ALJ concluded on balance that despite fluctuation in reported pain levels, her condition has been stable with unchanged objective findings over time. AR 34. This was a reasonable characterization of the record.

In short, Plaintiff had mild to moderate spinal pathology, a mix of normal and abnormal

examination findings related to her lower back, and radicular pain. The condition was managed with medication, physical therapy and ultimately, a successful epidural steroid injection. The ALJ appropriately included work restrictions in consideration of Plaintiff's back condition, though not as restrictive as opined by Dr. Stoltz.

The ALJ committed no error with respect to Dr. Stoltz's opinion.

### B.   Plaintiff's Pain Testimony

#### 1.   Applicable Law

The ALJ is responsible for determining credibility,[5] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p

---

[5] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2.   **Analysis**

After offering a summary of Plaintiff's testimony (the accuracy and completeness of which Plaintiff does not dispute), the ALJ rejected the testimony, explaining as follows:

> Despite these allegations, the evidence indicates she maintains the ability to perform numerous tasks including attending to her personal care needs, going outside, watching TV, listening to music, and spending time with family (Hearing Testimony & Ex. 1A, 5A, 7E, 8E, 12F). In addition, the claimant was noted to perform seasonal type work as an agriculture picker and sorter, even after the alleged onset date of disability. Overall, the undersigned finds that although the claimant may have limits in the type of work she can perform, the objective findings below do not support the claimant's allegations of an inability to do all work.

AR 31.

At the conclusion of the decision, the ALJ also stated as follows:

> Treatment notes in the record do not sustain the claimant's allegations of a disabling impairment. The persuasiveness of the claimant's allegations is weakened by inconsistencies between her allegations and the medical evidence of record. The undersigned finds that the claimant experienced some limitations but only to the extent described in the residual functional capacity above.

AR 34.

As to the ALJ's conclusions concerning the objective medical record, Plaintiff raises no new argument not already addressed above. Granted, as Plaintiff emphasizes, subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective

medical evidence." Nevertheless, the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

An ALJ can rely on a claimant's daily activities as a basis for discrediting a claimant's testimony if (1) the daily activities contradict the claimant's other testimony; or (2) "a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The parties dispute whether the activities the ALJ cited above meet the criteria from *Orn*. As should be self-evident, they do not. Attending to personal care and going outside are the only cited "activities" that involve any actual movement of one's body, albeit in an unspecified manner for an unspecified duration. Watching TV is often cited as evidence of adequate concentration despite mental impairments, but there are no mental impairments at issue here. Listening to music requires neither movement nor concentration. And "spending time with family" begs more questions than it answers (who is travelling to visit whom? how exactly is the time being spent?). If there were ever a case for an ALJ to simply forge the obligatory list of "daily activities" in support of an adverse credibility determination, this was such a case.

The parties also dispute whether Plaintiff's work as an agricultural picker/sorter undermines her testimony. "Work that [a claimant is] forced to stop after a short time because of [an] impairment" is considered an unsuccessful attempt to work. 20 C.F.R. §§404.1574(a)(1), 416.974(a)(1). "(1) Ordinarily, work you have done will not show that you are able to do substantial gainful activity if, after you worked for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level . . ." See, 20 C.F.R. §§404.1574(c), 416.974(c).

Plaintiff cites caselaw that an unsuccessful work attempt is not considered a clear and convincing reason to reject a claimant's pain and symptom testimony. Br. at 29 (citing *Ligenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). In response, Defendant emphasizes that Plaintiff's work as an agricultural sorter/picker was characterized as *seasonal* work, and Defendant cites several unpublished cases for the proposition that seasonal work is not considered an unsuccessful work attempt. Resp. at 20 (citing *Lopez v. Astrue*, No. 1:11CV01065 AWI DLB, 2012 WL 1192815, at *10 (E.D. Cal. Apr. 10, 2012) (holding that claimant's "seasonal work ended, by definition, because it was seasonal," and, therefore, did not constitute an unsuccessful work attempt); *see also Bendt v. Astrue*, No. SA CV 11-1609-PJW, 2012 WL 4364272, at *3 (C.D. Cal. Sept. 24, 2012); *Galanos v. Astrue*, No. 3:10-CV-05849-JCS, 2013 WL 1365901, at *11 (N.D. Cal. Apr. 3, 2013)).

In reply, Plaintiff cites her testimony that she had to stop after three weeks due to pain. Reply at 8, Doc. 21. The testimony reads as follows:

> Q: So what were you doing for Legacy Framers in 2015?
>
> INT: Okay. And, and I'm sorry, Your Honor. That was 2019?
>
> BY THE ADMINISTRATIVE LAW JUDGE:
>
> Q: Yes.
>
> A: It was just picking grapes and that was the last time because I -- that's when I could no longer tolerate the pain in my back and my knee.
>
> Q: Okay, and how long did you do that for?
>
> A: About three weeks.
>
> Q: You earned $1,500 in the third quarter of 2019 and $4,200 in the fourth quarter of 2019. That sounds like more than three weeks of work.
>
> A: I said I don't -- I don't remember very well like I said. But it wasn't – I wasn't working alone, it was my daughter and her little friend. And it wasn't per hour. It was not -- it was contract.

Q: How much were you paid?

A: And it's $0.25 per tray, so it depends. If you do 500 trays or 400, it just depends on -- the pay is based on how much you do.

AR 52

Thus, Plaintiff contends that she did not complete the picking season and her attempt at seasonal work therefore failed. Reply at 8, Doc. 21. The argument is not persuasive. Plaintiff did not testify as to how long the picking season was or whether she completed it. Her testimony "that was the last time because . . . that's when I could no longer tolerate the pain" is consistent with the idea that "that" was simply the last picking season she worked, and did not return for future seasons because of her pain. There is no reason to believe she quit before the picking season concluded.

Even assuming that the grape picking season lasts longer than 3 weeks, Plaintiff also testified that her recollection of the events in question was fuzzy. The ALJ questioned Plaintiff's estimate that she worked only 3 weeks, noting that she reflected $1500 earnings for the third quarter of 2019 and $4200 for the fourth quarter 2019 for a total of $5,700, which seemed to the ALJ like more than 3 weeks' worth of pay. *Id.*

Plaintiff's explanation here is not altogether convincing, particularly given Plaintiff's lack of confidence in her own recollection.[6] Her earnings took place over two different quarters in 2019, which is possible only if the 3 weeks happened to span the very tail end of quarter three into quarter four, which ostensibly seems unlikely. But the Court need not resolve this question nor delve further into it.

The ALJ described it as seasonal work and found that it undermined Plaintiff's testimony.

---

[6] Although the ALJ did not overtly discredit this testimony, she did not find that it was an unsuccessful work attempt, nor did she find it fell below the threshold for substantial gainful activity (the two circumstances outlined in 20 C.F.R. §§404.1574(c)).. To the contrary, she found it met the threshold for substantial gainful activity, described it as seasonal work, and found that it undermines Plaintiff's testimony.

That finding is supported.  Even if the seasonal work does not directly contradict Plaintiff's other testimony it still casts significant doubt on the notion that Plaintiff was as limited as alleged, specifically as to her stated standing and walking limitations.  *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

Further to the point, it bears mentioning that the ALJ did not reject the notion that Plaintiff was limited in many respects.  To the contrary, the ALJ found many severe impairments and assessed various associated limitations.  To the extent Plaintiff believes she offered testimony which, if credited as true, would require more stringent work restrictions than the ALJ included in the RFC, it was her burden to identify as much.  To that end, Plaintiff underscores only one piece of testimony that should have been credited as true and would be outcome determinative, namely a statement from her function report that "she can walk about 100 feet before needing to rest for 10 minutes before resuming walking and uses a walker or cane on a daily basis."  Br. at 30 (citing AR 339-340).  The fact that she performed seasonal work as a fruit picker tends to undermine this testimony.  The testimony is further undermined by the fact that the record contained mixed findings as to gait, many of which noted normal gait.  *See, e.g.*, AR 908, 1255, 1276, 1307, 1311, 1316, 1319, 1321.  Her seasonal work and the objective evidence, in combination, were clear and convincing reasons to discount her testimony.

**VI.   Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from

the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Maria Angeles Flores Rodriguez.

IT IS SO ORDERED.

Dated:     **November 21, 2022**                              **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE